Sedgwick, Ch. J.—(Dissenting.)
—In differing with my learned associate, I am of opinion that, as a consequence of applying the ordinary tests, it will be found that the judgment appealed from does not rest upon any cause of action stated in the complaint and supported by the testimony, or upon any cause of action stated in the findings of fact.
The cause of action stated in the complaint, depends upon the averments that the plaintiff’s testator was a partner in the firm of Wotherspoon & Co., and .as such partner had a certain interest in the capital and profits of the business ; that the defendant and certain other persons were, with the plaintiff’s testator, the members of the firm ; that these other .persons left the firm, withdrawing their interests, after settling with the defendant; that thereafter the defendant continued the business, retaining the assets, including the capital and profits belonging to the plaintiff; that in the year 1880, the testator, then alive but unable to transact business, the plaintiff demanded from the defendant “ an account of the amount of said moneys owing by him to said James Wotherspoon, and then in his possession, on account of the business of said firm, and that said defendant thereupon, on April 30, 1880, rendered and stated his account with the said James Wotherspoon of that date, and delivered the same to the plaintiff on behalf of said James Wotherspoon, a copy of which account is hereto annexed and forms part of this complaint, and in and by said account the defendant admitted himself to be *162 indebted to the said James Wotherspoon on the firm account, at the last mentioned date, in the sum of $7,300.51. That at the time said account was rendered, said James Wotherspoon was of weak and imbecile mind, and unable to transact any business, and plaintiff refused, on his behalf, to accept said account as correct and final, but the plaintiff having no means of verifying said account, and being informed that the books of said firm had been destroyed, is willing to accept said account as correct, except as to the sum of $1,600, etc.”
It may be assumed, without discussion, I think, that an account in a book, or a statement of an account from a book, is not a chose in action in itself. It only contains statements or admissions, or evidence of facts. The facts, if they really exist, are the constituents, of the cause of action. The account is but evidence of one kind, subject to explanation, qualification or contradiction, as is any other kind of evidence. To make an account stated a substantive cause of action, it is necessary to allege and prove that the accounting was had concerning prior dealing ; e. g., sums of money, before due and owing by defendant to plaintiff, and then in arrear and unpaid.
In the present case, the testimony showed that the testator had never been a partner, and the account delivered to the plaintiff did not show any amount due to the testator as a partner.,
Among the findings of fact there is none that is equivalent to a finding that the testator had been a partner at any time. If there were, the testimony would not support it. The finding on this subject was, “that during the year 1867, and subsequently, the said James Wotherspoon was entitled to receive and did receive a share of the profits of the business so conducted by said defendant in said firm name, and that said defendant, from time to time during the year 1867, and subsequently, received and held divers sums of money belonging to said James Wotherspoon, consisting in part of amounts adjusted and paid to said James Wotherspoon as his said share of profits, and in part of other moneys belonging to said James Wother *163 spoon, 'and that January 2, 1879, there was of such moneys of said James Wotherspoon in the hands of said defendant, the sum of $9,841.23; that thereafter the defendant paid and expended for and on account of said James Wotherspoon, the several sums of money in that behalf mentioned-in the statement thereof annexed to the complaint, except the item of April 30, 1880, of $1,600, and that the said statement was rendered by defendant to said James Wotherspoon, as alleged in the complaint, and that the balance of said moneys in defendant’s hand on April 30, 1880, was $8,900.51.” Rot only is there here no finding that the plaintiff’s testator had an interest as a partner, but there is no testimony to sustain what may be alleged to be facts, contained among the findings. There was no proof that the defendant received or held divers sums of money of the kind described by the findings. The testimony, in its most favorable aspect for plaintiff, showed that from time to time, although the testator was not a partner, certain portions of profits were credited to him. The profits had not been received for the testator, but for the firm. If he had any right to the portions credited to him, it could result only from some contract obligation on the part of the defendant, to pay him that portion of the profit. If the result was that he would be entitled to the portion, it would be an inference from the existence of the contract, and it would be necessary to find from the testimony that there was such a contract. The judge did not find that any such contract was made. On the contrary, he refused to find-otherwise than he had already found in the findings already stated, in reply to a request of defendants to find that a memorandum in James Wortherspoon’s handwriting, marked “Exhibit K,” shows the arrangement between him and the firm, and that there never was any other bargain or agreement than this. The memorandum was as follows:
“ From the first May, 1866, the following are the shares of the respective partners of the firm of Wotherspoon & Co., of the net profits of the business, all expenses, salaries *164 and subsidiary allowances' being first deducted. D. A. McTavisli and D. 0. Wotherspoon to receive one-fourth each, and Greorge Wotherspoon one-half.
“New York, 17 May, 1866. Gr. Wotherspoon,
D. A. McTavish,
D. 0. Wotherspoon.
“Allowance to James Worth erspoon, $2,000 per annum, and 5 per cent, of net profits.”
There can be no doubt that this instrument was the original contract between the parties, but it is now referred to to emphasize the statement that the claims of the complaint were not supported by the evidence, and that the findings of fact do not state the cause of action claimed by the complaint, or, in my judgment, any other cause of action countenanced by the testimony.
In what way then can the judgment be sustained ? Only by looking through the evidence to find whether there' are pieces of testimony which might support an action ; for instance, inferences that might be drawn from the accounts that were handed by defendant to plaintiff. It view of all the testimony, it would seem to me, if it were right to pass upon the question, that the only obligation that ever existed between the defendant’s firm and the testator arose out of an employment of the latter, upon the terms, originally as stated in the memorandum that has been referred to. A condition of receiving compensation under that con-, tract was the performance of or the offer to perform the services intended by it. After a time the son became a confirmed invalid, and by the first part of 1874 was unable to perform the services.. Although the father, after that time, continued to give those credits, the amount of a part of which was recovered in the present judgment, the testator was not entitled to such credits, but they were voluntarily, and without consideration, made in the accounts. .If the accounts delivered create a presumption of obligation, the testimony shows that that arose only out of the contract of employment, and the testimony affirmatively shows that the testator had not performed on his part, and that there *165 fore there was, in fact, no obligation on defendant’s part. But I am of opinion that we can examine no other claim than that on which the plaintiff stood at the trial. And the examination of any ether claim must be remitted to the court of first instance.